IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CHARLOTTE CHRISTENSEN,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>JOHNSON SMITH & ASSOCIATES, and JOHN DOES 1–10<br><br>　　　　　　Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:19-CV-00676-BSJ<br><br>District Judge Bruce S. Jenkins |

This matter came before the Court for an evidentiary hearing to determine damages on December 7, 2020. Eric Stephenson appeared on behalf of Charlotte Christensen ("Ms. Christensen"). Ms. Christensen was sworn in and testified. Johnson Smith & Associates ("Johnson") and John Does 1–10 (collectively, "Defendants") previously defaulted and did not appear.

Having considered the plaintiff's briefs, the evidence presented, the arguments of counsel, and the relevant law, the Court finds Defendants harassed Ms. Christensen in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, deceived Ms. Christensen in violation of the Utah Consumer Sales Practices Act ("UCSPA"), Utah Code Ann. § 13-11-1 *et. seq.*, and committed common law fraud.

The Court entered default on June 3, 2020.[1] Following an evidentiary hearing on damages, the Court grants judgment pursuant to Federal Rule of Civil Procedure 55(b) in favor

---

[1] Default Certificate.

of Ms. Christensen in the amount of $16,781.90 in actual damages, $1,000 in statutory damages, $50,345.70 in punitive damages, and a total of $22,241.16 in attorney's fees and costs.

## BACKGROUND

Because of the default entered against Johnson, Smith & Associates and John Does 1–10, the Court accepts as true all the well-pleaded factual allegations of the complaint, except those relating to damages. *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1274 (D. Kan. 2016); *see also* 10A Charles Alan Wright & Arthur P. Miller, Federal Practice and Procedure § 2688.1 (4th ed. 2020). Additionally, Ms. Christensen testified at the December 7 hearing regarding the factual basis of her claims, as well as her damages. Based on that testimony and the documents and declarations submitted, the Court makes the following findings.

On or around May 21, 2019, Defendants began attempting to collect a past due financial obligation from Ms. Christensen on behalf of Jordan Valley Medical Clinic.[2] Defendants' attempts included phone calls to Ms. Christensen and a collection letter sent to her home.[3] On May 21, 2019, one of the John Doe Defendants called Ms. Christensen.[4] Ms. Christensen did not answer, and the John Doe Defendant left a message.[5] In the message, the John Doe Defendant made the following representations: she stated her name was Ian Wallace; she was a filing secretary for the law firm Johnson, Smith & Associates; she was collecting from and on behalf of Johnson, Smith & Associates; the firm had legal documents regarding a debt owed by Ms. Christensen; the firm had legal papers to deliver to Ms. Christensen; Ms. Christensen was

---

[2] Compl. As alleged in the complaint, more than six years had passed since the purported origination date of the debt. As such, the alleged obligation was subject to the statute of limitations defense.

[3] *Id.*

[4] *Id.*

[5] *Id.*

2

required to arrange for delivery or call to postpone, delay, or reschedule delivery of the legal documents; there was a lawsuit regarding the alleged debt; and the case number for the pending legal action was 443896.[6] Ms. Christensen testified that after receiving the message, she panicked.[7] She stated that she believed there was an actual case filed or pending against her and that she was going to be served with papers.[8]

Ms. Christensen called Defendants back shortly after she received the message on May 21.[9] Ms. Christensen testified that Defendants answered as if they were a law firm and put her on hold for her caseworker.[10] Ms. Christensen spoke with a different John Doe Defendant who identified himself as Andrew Thomas.[11] During the call, Mr. Thomas stated he and the other Defendants were collecting a past debt, and he had authority to negotiate with her regarding the debt.[12] Ms. Christensen responded that she did not owe the debt and disputed the debt in October of 2012.[13] Mr. Thomas stated that Defendants filed a lawsuit against Ms. Christensen.[14] Mr. Thomas further told Ms. Christensen that if she fought the lawsuit, the judge would rule that her disputes were a trick to avoid paying her debt.[15] More egregiously, Mr. Thomas threated to convert the suit to a criminal case for fraud unless Ms. Christensen paid the money during the call.[16] The threats did not stop there. Mr. Thomas told Ms. Christensen the Defendants could

---

[6] *Id.*

[7] Hr'g Tr., Dec. 7, 2020.

[8] *Id.*

[9] Compl.; Hr'g Ex. 3.

[10] Hr'g Tr., Dec. 7, 2020.

[11] Compl.

[12] *Id.*

[13] *Id.*

[14] *Id..*

[15] *Id.*

[16] *Id.*

force her to pay the amount of the debt plus legal fees and costs if she refused to pay.[17] Ms. Christensen testified that Mr. Thomas told her if she disputed the debt in court, it would become fraudulent and she could go to jail.[18] This made Ms. Christensen panic.[19] Ms. Christensen believed Defendants could bring a criminal matter against her and put her in jail if she disputed the debt.[20] She was working to improve her credit rating during the time of the communications from Defendants.[21] After the call, Ms. Christensen called her husband and mother because she wanted to find money to pay the callers.[22] Ms. Christensen became extremely worried and felt her entire body tense up.[23]

Also on May 21, 2019, Defendants sent Ms. Christensen a collection letter.[24] The collection letter stated it was the "FINAL DEMAND FOR UNPAID BALANCE ON THE ABOVE LISTED DEFAULTED ACCOUNT."[25] The amount owed was listed as $3,356.38.[26] The original creditor was listed as Jordan Valley Medical Center.[27] The letter referred to Ms. Christensen as a defendant.[28] The letter further stated that because Ms. Christensen had not made payment on the debt, "we have turned your account over to our legal department and instructed

---

[17] Compl.
[18] Hr'g Tr., Dec. 7, 2020.
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] Compl.
[25] Hr'g Ex. 4.
[26] *Id.*
[27] *Id.*
[28] *Id.*

4

them to commence without further delay."[29] The letter went on to state that unless they received payment in full by June 7, 2019, "we will immediately turn this case over to our filing department for legal collection proceedings against you without further notice."[30] The threats continued: "These proceedings will include claims for pre-judgment interest on your account, and all legal and court-related costs, (if applicable) in connection with collection of this past-due account and will substantially increase the amount that you owe. Collection proceedings may also have an adverse effect on your credit rating."[31] Finally, after instructing Ms. Christensen to pay the amount owed by June 7, 2019, the letter stated that if Ms. Christensen paid the amount and the matter was settled out of court, "Johnson, Smith & Associates will release you from all legal claims and liabilities pertaining to this account and our trade line with all major credit bureaus will be updated as paid in full."[32] The last paragraph, centered and in bold, stated, "If this firm does not get a response by June 7, 2019, we will proceed under the assumption that you have given up your last legal right and opportunity to settle this account voluntarily."[33] The letter was signed from Chad Armstrong, "Director of Litigation."[34]

Ms. Christensen understood the threats in the letter as threats to sue her.[35] She stated that the letter looked real and did not have any indication it was false or fraudulent.[36] She further testified that she became extremely worried.[37] She called Jordan Valley Medical Center about the

---

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] Hr'g Tr., Dec. 7, 2020.

[36] *Id.*

[37] *Id.*

debt, and they said they had sold it.[38] Ms. Christensen knew she had paid the debt, but discovered on the call that Jordan Valley Medical Center believed she had not paid it and had sold it.[39]

Ms. Christensen suffers from fibromyalgia.[40] After receiving the calls, she panicked.[41] The panic caused her fibromyalgia to flare up.[42] She testified that she got an instant headache that lasted for four or five days.[43] Her whole body ached.[44] She testified that it was "like flu pain times ten, just complete pain, unable to do anything."[45] Ms. Christensen and her husband had planned a family vacation to go camping that her children were looking forward to.[46] However, because of the pain, Ms. Christensen could not participate in the vacation.[47] She laid in the camper in pain while her mother took care of her and her husband took the children out.[48] She was extremely tired, but could not sleep because of the pain.[49] Her body ached, and she could not get comfortable because she had a headache.[50] She stated, "I can normally manage my pain very well, but I just hadn't had pain like this before. It was so bad I couldn't open my pill bottles. My

---

[38] *Id.*

[39] *Id.* Ms. Christensen's attorney, Mr. Stephenson, spoke to Jordan Valley Medical Center. They said they sold the debt, but not to Johnson, Smith & Associates.

[40] *Id.*; *Fibromyalgia,* CDC.COM, https://www.cdc.gov/arthritis/basics/fibromyalgia.htm (last visited December 30, 2020), ("Fibromyalgia is a condition that causes pain all over the body (also referred to as widespread pain), sleep problems, fatigue, and often emotional and mental distress.").

[41] Hr'g Tr., Dec. 7, 2020.

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *Id.*

mom had to open my pill bottles. I was weak."[51] She stated this was the worst and longest flare up of fibromyalgia she had ever had.[52] Ms. Christensen testified that she believes the threat of criminal charges against her pushed her "over the edge" and caused the extreme pain related to her fibromyalgia flare-up.[53]

The Court accepts the allegations in the Complaint that none of the information in the calls or letters was true or correct.[54] There is no law firm named Johnson, Smith & Associates in Utah.[55] The callers Ian Wallace and Andrew Thomas were using pseudonyms to hide their true identities.[56] There was no Chad Armstrong, director of litigation for the firm.[57] There was no case pending against Ms. Christensen.[58] There is no court in Utah or the rest of the United States where 442896 is a valid case number.[59] The Defendants did not have legal documents filed in their office pertaining to a debt owed by Ms. Christensen.[60]

## DISCUSSION

A. The law

After default is entered, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (internal quotation

---

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] Compl.

[55] *Id.*

[56] *Id.*

[57] *Id.*

[58] *Id.*

[59] *Id.*

[60] *Id.*

7

omitted). "There must be a sufficient basis in the pleadings for the judgment entered." *Id.* (internal quotation omitted).

Ms. Christensen claims damages under the FDCPA and UCSPA as well as for fraud.[61] The statutory remedies under the FDCPA and UCSPA are similar but not identical. *Compare* 15 U.S.C. § 1692k(a)(1), (a)(2)(A), *with* Utah Code Ann. § 13-11-19(1)–(2). The FDCPA allows actual damages and additional damages up to $1,000. 15 U.S.C. § 1692k(a)(1), (a)(2)(A). The UCSPA allows "actual damages or $2,000, whichever is greater, plus court costs." However, while the FDCPA does not contemplate punitive damages, the UCSPA permits "remedies otherwise available for the same conduct under state or local law." *See* 15 U.S.C. § 1692k; *Sweetland v. Stevens & James, Inc.*, 563 F. Supp. 2d 300, 303 (D. Me. 2008) (punitive damages unlikely under the FDCPA); Utah Code Ann. § 13-11-23. The FDCPA does not preempt state laws, as long as the state law affords greater protection to the consumer than the FDCPA. *Reid v. LVNV Funding, LLC*, No. 2:14CV471, 2016 WL 247571, at *7 (D. Utah Jan. 20, 2016).

Courts have interpreted "actual damages" to include damages for mental anguish or emotional distress caused by the debt collector's statutory violation. *Young v. NPAS, Inc.*, 361 F. Supp. 3d 1171, 1199 (D. Utah 2019); *Soren v. Equable Ascent Fin., LLC*, No. 2:12-CV-00038, 2012 WL 2317362, at *3 (D. Utah June 18, 2012). Tenth Circuit precedent regarding the sufficiency of evidence "to support a claim for actual damages for emotional distress under the FCRA is . . . directly relevant to . . . [determining] the existence of actual damages for Defendants' FDCPA violations." *Young*, 361 F. Supp. 3d at 1201. In *Llewellyn*, the Tenth Circuit stated, "[a]n injured person's testimony *alone* may suffice to establish damages for emotional distress provided that she reasonably and sufficiently explains the circumstances surrounding the

---

[61] *Id.*

8

injury and does not rely on mere conclusory statements." *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1183 (10th Cir. 2013) (internal quotation omitted) (discussing emotional distress damages as actual damages under the Fair Credit Reporting Act). The Tenth Circuit further stated the Plaintiff in Llewellyn was "not required to produce evidence to corroborate his detailed and specific testimony . . . ." *Id.* Additionally, emotional distress damages are permitted under a Utah common law fraud claim. *Campbell v. State Farm Mut. Auto. Ins. Co.*, 65 P.3d 1134, 1164–65 (Utah 2001), *rev'd on other grounds*, 538 U.S. 408 (2003).

Finally, both the FDCPA and UCSPA permit an award of attorney's fees on a successful action. 15 U.S.C. §1962(k)(a)(3); Utah Code Ann. § 13-11-19(5).

B. Defendants' liability

The Court finds a sufficient basis in Ms. Christensen's pleadings to find Defendants liable under the FDCPA, UCSPA, and for fraud.

1. FDCPA

To prevail on a claim under the FDCPA, Ms. Christensen must demonstrate that Defendants engaged in prohibited conduct in attempting to collect a debt. *Reid*, 2016 WL 247571, at *3. Based on the allegations in the complaint, which again are admitted by default, and the evidence at the hearing, the Court concludes Defendants' conduct violated several of the debt collection provisions of the FDCPA: 15 U.S.C. § 1692d(2) ("use . . . language the natural consequence of which is to abuse the hearer."); 15. U.S.C. §1692e(2)(a) ("The false representation of the character, amount, or legal status of any debt."); 15 U.S.C. § 1962e(3) ("The false representation or implication that any individual is an attorney or that any communication is from an attorney."); 15 U.S.C. § 1962e(4) ("The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person . . ."); 15

9

U.S.C. § 1692e(5) ("The threat to take action that cannot legally be taken or that is not intended to be taken."); 15 U.S.C. § 1692e(6)(A) ("The false representation or implication that a sale, referral, or other transfer or any interest in a debt shall cause the consumer to lose any claim or defense to payment of the debt."); 15 U.S.C. § 1962e(7) ("The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer."); 15 U.S.C. § 1692e(8) ("Communicating or threatening to communicate to any person credit information which is known or which should be known to be false . . ."); 15 U.S.C. § 1962e(10) ("The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."); 15 U.S.C. § 1692e(11) ("The failure to disclose in the initial written communication with the consumer . . . that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose . . ."); 15 U.S.C. § 1692e(13) ("The false representation or implication that documents are legal process."); 15. U.S.C. § 1692e(14) ("The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization"); 15 U.S.C. § 1692f ("A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."); 15 U.S.C. § 1692f(1) ("The collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law."); and 15 U.S.C. §1692g (detailing specific information the debt collector must communicate to the creditor).

Specifically, the Court finds Defendants falsely represented they had a legal right to collect on a debt, falsely represented they were a law firm acting with legal authority, threatened to bring criminal charges against Ms. Christensen, used a fictitious business name, and failed to include the requisite information required by the FDCPA in communications with Ms. Christensen.

2. UCSPA

The UCSPA "shall be construed liberally" to "protect consumers from suppliers who commit deceptive and unconscionable sales practices." Utah Code Ann. § 13-11-2. The code defines a supplier as a "seller, lessor, assignor offeror, broker, or other person who regularly solicits, engages in, or enforces consumer transactions, whether or not he deals directly with the consumer." Utah Code Ann. § 13-11-3. Utah courts have found "attorneys and law firms that are regularly engaged in the business of collecting consumer debt can be suppliers under the UCSPA . . . and are subject to the Act when they are acting 'in connection with a consumer transaction.'" *Gallegos v. LVNV Funding LLC*, 169 F. Supp. 3d 1235, 1244 (D. Utah 2016). "The plain language of the UCSPA specifically identifies intentional or knowing behavior as an element of a deceptive act or practice." *Reid*, 2016 WL 247571, at *6 (internal quotation omitted).

The Court finds Defendants' conduct violated the following provisions of the UCSPA: Utah Code Ann. § 13-11-4 ("A deceptive act or practice by a supplier in connection with a consumer transaction."); Utah Code Ann § 13-11-5 ("An unconscionable act or practice by a supplier in connection with a consumer transaction."). Specifically, the Court finds Defendants' threats of legal action and criminal charges against Ms. Christensen rise to the level of oppression and unfair surprise to constitute unconscionability.

3. Fraud

The Court further finds Defendants' conduct fraudulent. In Utah, a claim of fraud requires the plaintiff to prove nine elements:

> "(1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to

11

that party's injury and damage." *Pierucci v. Pierucci*, 331 P.3d 7, 12 (Utah App. 2014) (internal citation omitted).

Defendants' conduct satisfies the elements of fraud listed above. Specifically, Defendants made many false representations regarding an alleged debt in an attempt to coerce Ms. Christensen to pay them. Ms. Christensen relied upon these representations when she called Defendants to discuss the debt and sought out means of paying the debt. As a result of Defendants' actions, Ms. Christensen suffered mental and emotional distress and physical pain.

C. Damages

Ms. Christensen seeks $33,560 in actual damages, $1,000 in statutory damages, $150,000 in punitive damages, $21,520 in attorney's fees, and $721.16 in costs.

1. Actual Damages

The acts of fraud and violations of the FDCPA and UCSPA violated Ms. Christensen's rights to dispute the debt and to fully understand the nature of the debt collection. The Court accepts the evidence that Ms. Christensen suffered mental and emotional distress because of Defendants' conduct. Defendants' communications with Ms. Christensen caused her fear, anxiety, and anguish. As a result, Ms. Christensen's fibromyalgia flared up and she suffered great physical pain. Additionally, Ms. Christensen could not enjoy a family vacation or care for her children because of this pain and suffering.

However, the Court finds Ms. Christensen's request of $33,560 overshoots the mark. Ms. Christensen testified that her fibromyalgia pain lasted for four to five days following the communications with Defendants. Because Defendants sought to perpetrate a fraud of $3,356.38, the Court will use this amount as a basis to calculate Ms. Christensen's damages. The Court will award this amount for each of five days of pain and suffering. Accordingly, the Court awards Ms. Christensen $16,781.90 in actual damages.

12

2. Additional damages

In determining any "additional damages" award under 15 U.S.C. § 1962k(a)(2)(A), the statute directs the courts to consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1962k(b)(1). Here, the Defendants noncompliance was neither especially frequent nor persistent. Defendants communicated with Ms. Christensen by phone three times and sent one letter. However, the nature of the noncompliance included representations that Defendants were a law firm, Defendants would take legal action against her, and threats to convert the action to a criminal matter or have her put in jail. This conduct is egregious and violates many provisions of the FDCPA. The Court infers from Defendants' many false representations and baseless threats that the conduct was intentional. Accordingly, the Court awards additional damages in the total amount of $1,000.

3. Punitive damages

Utah law permits punitive damages for fraudulent conduct "only if compensatory or general damages are awarded and it is established by clear and convincing evidence that the acts or omission of the tortfeasor are the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of others." Utah Code Ann. § 78B-8-201. Utah courts analyze seven factors to assess punitive damages:

> (i) the relative wealth of the defendant; (ii) the nature of the alleged misconduct; (iii) the facts and circumstances surrounding such conduct; (iv) the effect thereof on the lives of the plaintiff and others; (v) the probability of future recurrence of the misconduct; (vi) the relationship of the parties; and (vii) the amount of actual damages awarded.[62]

---

[62] *Westgate Resorts, Ltd. v. Consumer Prot. Grp., LLC*, 285 P.3d 1219, 1223 (Utah 2012) (modifying the fourth factor to comport with the U.S. Supreme Court's holding in *Phillip Morris USA v. Williams*, 549 U.S. 346 (2007),

13

Based upon the allegations of the Complaint and the testimony during the hearing on damages, the Court finds Defendants did act willfully, knowingly, and fraudulently in an effort to deceive plaintiff. Turning to the seven factors, the Court has no evidence on the record of the relative wealth of Defendants. The Court finds the nature of the alleged misconduct most egregious. Defendants used intimidation techniques, threated Ms. Christensen, and used the law and the pretense of legality as a means of coercion. Defendants had no legal right to collect on Ms. Christensen's loan because it was outside the statute of limitations and the original creditor did not sell it to them.[63] But Defendants used Ms. Christensen's knowledge of a past debt to intimidate her. Defendants' threats and intimidation had a great effect on Ms. Christensen's life.

As to the remaining factors, the probability of a future recurrence of misconduct is unknown. However, Defendants clearly established an apparatus to threaten and intimidate alleged debtors, given the nature of the calls and the letter sent to Ms. Christensen. A future recurrence of misconduct, while not certain, cannot be ruled out. The parties had no prior relationship. As such, the Court concludes punitive damages are warranted in this case. In view of the evidence presented, the Court will award punitive damages of $50,345.70, which is three times plaintiff's actual damages described above.[64]

---

and clarifying that the fourth factor "may only be used to assess reprehensibility, but may not be used to directly punish a defendant for harm caused to nonparties.").

[63] Compl.

[64] *Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 810 (Utah 1991), holding modified on other grounds by *Westgate Resorts, Ltd. v. Consumer Prot. Grp., LLC*, 285 P.3d 1219 (Utah 2012) ("[T]he amount of a punitive damage award generally must bear a 'reasonable and rational' relationship to the actual damages."). *Crookston*, 817 P.2d at 810. ("Generally, we have found punitive damage awards below $100,000 not to be excessive only when the punitives do not exceed actual damages by more than a ratio of approximately 3 to 1.").

14

4. Attorney's fees

The FDCPA permits an award of attorney's fees "in the case of any successful action to enforce the foregoing liability." 15 U.S.C. § 1962k(a)(3). Likewise, the UCSPA states "the court may award to the prevailing party a reasonable attorney's fee limited to the work reasonably performed if . . . a supplier has committed an act or practice that violates this chapter; and . . . an action under this section has been terminated by a judgment . . ." Utah Code Ann. § 13-11-19.

Attorney Eric Stephenson of White & Garner submitted an affidavit, which itemizes 53.80 hours of time at the hourly rate of $400.00 for a total of $21,520.00. *Aff. Of Attorney's Fees and Costs*, ECF No. 50. Mr. Stephenson represented to the Court that he regularly bills his clients at $400 per hour for work, even if it is on a contingent fee basis. *Id.* As Defendants defaulted, they have not opposed the motion for attorney's fees and thus have not contested Mr. Stephenson's hourly rate. Further, courts in Utah have found hourly rates of $320 to $450 reasonable in FDCPA cases. *See Reid*, 2016 WL 4532107, at *2 (finding hourly rate of $320 reasonable in 2016); *Morrison v. Express Recovery Servs., Inc.*, No. 1:17-CV-51, 2020 WL 3791893, at *3 (D. Utah July 7, 2020) (finding hourly rates of $450, $350, and $180 reasonable for the Salt Lake City market). Accordingly, the Court finds that a fee of $400 per hour is reasonable in this case. Mr. Stephenson also submitted proof that through the December 7 hearing, he had spent nearly 54 hours on this case. The Court finds 54 hours is reasonable, given the difficulty of investigating and locating Defendants. Mr. Stephenson established he incurred costs of $721.16 for filing fees, service fees, and medical records. *Id.* The Court finds these costs to be reasonable. Applying the factors of the lodestar test,[65] the Court finds that an attorneys' fee

---

[65] *Gisbrecht*, 535 U.S. at 789 (2002) (Under the lodestar method, "the number of hours reasonably devoted to each case [is] multiplied by the reasonable hourly fee.").

15

award of $21,520 is reasonable and appropriate in this case. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 802 (2002) ("The lodestar method today holds sway in federal-court adjudication of disputes over the amount of fees properly shifted to the loser in the litigation"); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 ("It remains for the district court to determine what fee is 'reasonable.'").

The Court awards attorney's fees and costs in the total amount of $22,241.16.

## CONCLUSION

The Court GRANTS Default Judgment in favor of Ms. Christensen. Ms. Christensen's damages are as follows:

> Actual Damages: $16,781.90
> Statutory Damages: $1,000.00
> Punitive Damages: $50,345.70

The Court further GRANTS Mr. Stephenson's Motion for Attorney's Fees and Costs in the following amounts:

> Attorney's Fees: $21,520.00
>
> Costs: $721.16

**IT IS SO ORDERED.**

DATED this 7th day of January, 2021.

Bruce S. Jenkins
United States Senior District Judge